## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

SONRISA GONZALES,

                              Plaintiff,

vs.                                                  CIVIL NO. 07-00162 MV/RHS

JAMES BRIAN NISSEN, in his official capacity          **FILED**
as an Employee of the Santa Fe County Sheriff's       UNITED STATES DISTRICT COURT
Department; CLIFTON COLEMAN; in his                   SANTA FE, NEW MEXICO
official capacity as an Employee of the Santa
Fe County Sheriff's Department; and the               SEP 3 0 2008
SANTA FE COUNTY SHERIFF'S
DEPARTMENT                                            MATTHEW J. DYKMAN
                                                      CLERK
                              Defendants.

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendants' James Nissen, Clifton Coleman

and the Santa Fe County Sheriff's Department's Motion for Summary Judgment, filed January 31,

2008 [Doc. No. 22]. The Court, having considered the motion, briefs, relevant law and being

otherwise fully informed, finds that Defendants' Motion is well-taken in part and will be

**GRANTED** in part.

### PROCEDURAL BACKGROUND

Plaintiff Sonrisa Gonzales filed claims against Defendants pursuant to 42 U.S.C. § 1983 and

§ 41-4-12 NMSA 1978 alleging that her Due Process and Equal Protection rights and her rights

under the New Mexico Tort Claims Act were violated in connection with her arrest on December

29, 2005.  After the parties had completed discovery, Defendants filed a motion for summary

judgment requesting that the Court enter judgment in favor of the Defendants on all of Plaintiff's

claims. For the reasons explained below, the Court concludes that Defendants' motion is well-taken

in part.

## FACTUAL BACKGROUND

On December 29, 2005, Plaintiff Sonrisa Gonzales was arrested by Santa Fe Sheriff's Deputy James Brian Nissen ("Nissen") for driving while intoxicated ("DWI"). Another woman, Trish Rudolph ("Rudolph") who was driving in a separate car with Plaintiff's brother ("Gonzales"), was also arrested for DWI. Plaintiff's brother was arrested for resisting an officer. There were several other Santa Fe County Sheriff's Deputies at the scene of Plaintiff's arrest, including Deputy Clifton Coleman ("Coleman").

After Plaintiff, Rudolph and Gonzales were arrested at the scene, they were transported separately to the Sheriff's Department. Rudolph and Gonzales arrived at the Department before Plaintiff. Nissen transported Plaintiff to the Department and when they arrived, Rudolph, Gonzales and the other Deputies were already inside the Department. Plaintiff was alone with Nissen. According to Plaintiff, after she got out of the patrol car, "without necessity or provocation," Nissen "crushed [her] hand by squeezing it with his own hand while she was handcuffed." Complaint ¶ 16. In her deposition, Plaintiff testified specifically as follows: "I told him the cuffs were hurting me. At that point, he grabbed my right hand, and I felt it just like he squeezed really hard, and he said, 'Look.' He said, 'How can they be hurting you?' And he kind of tightened them again. And at that point, I was like. I almost fell to my knees, the pain was so intense (Pl. Ex. 3, Pl. Depo at 118, lines 3-13) . . ."it shot down my whole right side" (*id.* at 121, line 24) . . . "And it felt like he was rocking my hand as he was squeezing it . . ."(*id.* at 118, lines 11-12) . . . [M]y bones, I could feel them shifting (*id.* at 121, line 19.)."

Since the time of her arrest, Plaintiff has allegedly experienced ongoing pain and considerable discomfort in her right hand and wrist. She has been examined and treated for her injuries by several physicians, including Dr. Neal Devitt, Dr. Michael Baten, a neurologist, and Dr.

2

Paul Fullerton, a pain management specialist. She is currently diagnozed with "complex regional pain syndrome," a condition that can arise from trauma associated with a handcuff-type injury.

## LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Jones v. Kodak Medical Assistance Plan*, 169 F.3d 1287, 1290 (10th Cir. 1999). Under Rule 56(c), "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Rather, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248. A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Shapolia v. Los Alamos Nat'l Lab.*, 992 F.2d 1033, 1036 (10th Cir. 1993).

Once the moving party meets its burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial," Fed.R.Civ.P. 56(e), "as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l Inc. v. First Affiliated Secs.,Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1991) (citations omitted). The non-moving party's burden may not be satisfied by "conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Warfield v. Byron*, 436 F.3d 551, 557(5th Cir. 2006) (quoting *Freeman v. Texas Dep't of Crim. Justice*, 369 F,.3d 854, 860 (5th Cir. 2004). Rather, the non-moving party is required to "go beyond

3

the pleadings and, by affidavits or depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial." *Kaus v. Standard Ins. Co.*, 985 F. Supp 1277, 1281 (D. Kan. 1997), *aff'd*, 162 F.3d 1173 (10th Cir. 1998).

The Court "must view the facts in the light most favorable to the nonmov[ing party] and allow the nonmov[ing party] the benefit of all reasonable inferences to be drawn from the evidence." *Kaus*, 985 F. Supp at 1281. The ultimate inquiry in a summary judgment motion is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

## DISCUSSION

### I. Claims Against Santa Fe Sheriff's Department

Plaintiff brought claims against the Santa Fe Sheriff's Department ("Sheriff's Dep't") pursuant to § 1983 for violating Plaintiff's substantive Due Process and Equal Protection rights under the Fifth and Fourteenth Amendment and  pursuant to the New Mexico Tort Claims Act ("NMTCA") for failure to properly train, supervise and hire Nissen and Coleman.

Defendants contend and Plaintiff does not dispute that the Santa Fe Sheriff's Department is not a suable entity under §1983. The parties are correct. Governmental sub-units are not suable entities in § 1983 actions. *See Martinez v. Winner*, 771 F.2d 424, 444 (10th Cir. 1985)(Section 1983 claims dismissed because City of Denver Police Department not a separate suable entity). All claims brought against the Santa Fe Sheriff's Department must therefore be dismissed.

### II. Claims Against Nissen and Coleman in their Official Capacities

Plaintiff brought claims against Nissen and Coleman in their official capacities pursuant to §1983 and the New Mexico Tort Claims Act. All claims against Nissen (First and Fifth Causes of Action) and Coleman (Third and Fifth Causes of Action) in their official capacities must be

dismissed.   This is because the claims brought against Nissen and Coleman in their official

capacities represent claims against the Santa Fe Sheriff's Department. *See  Monell v. Department

of Social Services of the City of New York et al.,* 436 U.S. 658, 690, n. 55 (1978) ("official capacity

suits represent a means to plead an action against an entity of which an officer is an agent").[1]   As

this Court has already held, the Santa Fe Sheriff's Department is not a suable entity.

### III. Claims Against Coleman in his Individual Capacity

The Court has already dismissed all claims against Coleman in his official capacity.  The

following discussion pertains only to claims against Coleman in his individual capacity.

Plaintiff brings claims against  Coleman under § 1983 alleging violations of her substantive

due process and equal protection rights (Fifth Cause of Action) and under the New Mexico Tort

Claims Act  (Third Cause of Action) for breaching his duty as a supervisor to exercise ordinary care

to ensure Plaintiff's safety (supervisory liability), and for failing to intervene to prevent Plaintiff's

alleged assault and battery and federal and state constitutional rights of by Nissen.

Coleman contends that all claims against him should be dismissed because: (1) he was not

Nissen's supervisor at the time of Plaintiff's arrest; and (2) he cannot be liable on the theory that he

failed to intervene to prevent Nissen's alleged misconduct because he was not present at the time

Nissen allegedly squeezed Plaintiff's hand and tightened the handcuffs.

### A. Supervisory Liability

---

[1]Defendants urge the Court to consider the merits of Plaintiff's claims, assuming they had been brought against the correctly suable entity--the County of Santa Fe.  Defendants argue that even if the claims had been brought against the County, the County is entitled to summary judgment on all claims.  The Court declines to reach the merits.  At this juncture,  in the absence of a motion for leave to file an amended complaint, it is premature for the Court to determine the County's potential liability without full briefing on the issue.  The Court notes, however, that in light of Plaintiff's concession that the County provided "ongoing law enforcement training, including training in proper handcuffing techniques," and absent any evidence to support a §1983 claim of negligent hiring and supervision, Plaintiff's § 1983 municipality claim appears to rest on rather shaky grounds.

Coleman asserts that pursuant to NMTCA, he is not liable under Plaintiff's theory of supervisory liability because he was not the supervising officer at the scene, and, in fact, held the same rank as Nissen at the time of Plaintiff's arrest.   To support his position, Coleman  submits various exhibits, including an excerpt of the Santa Fe Sheriff's Department Standard Operating Procedures, an affidavit from Santa Fe County Sheriff Greg Solano, and an excerpt of his own deposition testimony. Coleman's exhibits establish that he was not the ranking officer at the scene, was not Nissen's direct-line supervisor, and in fact, held the same rank as Nissen at the time of Plaintiff's arrest.  They both held the rank of Deputy II. (*See* Def. Ex. F, Nissen's Depo at 21, Def. Ex. G, Affidavit of Clifton Coleman, Def. Ex. H, Affidavit of Greg Solano, Sheriff of Santa Fe County, Def. Ex. A, Excerpt of Standard Operating Procedures).

Plaintiff attempts to controvert the fact that Coleman was not Nissen's supervisor by pointing to Nissen and Coleman's deposition testimonies, as well as her own  testimony in which she states that Coleman was the "officer in charge." Pl. Depo at 226, l. 20.   She argues in effect that Coleman's position as a Field Training Officer ("FTO") conferred him with supervisory authority over Nissen.  While it is true that Coleman testified that he helped "fine-tune [Nissen's DWI] skills" during the pertinent  time frame,  it is equally true that he explained that in helping to "fine-tune" Nissen's skills, he was  "just passing experience." (Def. Ex. C at 68, line 16).  Moreover, Coleman stated in his affidavit that Nissen has "never been assigned to [him] in [his] capacity as an FTO." (Def. Ex. G ¶ 7).  Sheriff Solano explained in his affidavit that "FTOs who hold the same rank as another officer not assigned to the FTO do not have any supervisory responsibility or command authority over that officer." (Def Ex. H at 2).  It is uncontroverted that Nissen and Coleman held the same rank at the time of Plaintiff's arrest.  Plaintiff's speculative assertions that Coleman was the "ranking officer," as alleged in her complaint, and that he was "in charge" at the time of her

arrest, are insufficient to raise a triable issue of material fact. Complaint ¶¶29-31; Pl. Depo at 226, line 20.

The Court concludes that, when viewing the evidence in the light most favorable to Plaintiff, no reasonable jury could find that Coleman had supervisory authority over Nissen at the time of her arrest.      For this reason, he cannot be liable under Plaintiff's theory of supervisory liability pursuant to the New Mexico Tort Claims Act.[2]

## B. Failure to Intervene

It is undisputed that Coleman did not touch Plaintiff in any way during the course of her arrest.  The record also establishes that he did not affirmatively take any actions that caused Plaintiff's injuries.  Plaintiff seeks to hold Coleman liable pursuant to §1983 on the basis that he failed to intervene to prevent Nissen's commission of a constitutional violation. *See Mick v. Brewer*, 76 F.3d 1127, 1136 (10th Cir. 1996) ( law enforcement official may be liable under §1983 where he has the opportunity to intervene and prevent another law enforcement official's use of excessive force and fails to do so).   Plaintiff also seeks to hold him liable under the NMTCA for failing to intervene to prevent Nissen's  battery, assault and violation of Plaintiff's state and federal constitutional rights. *See Ortiz v. New Mexico State Police*, 112 N.M. 249, 814 F.2d 117 (Ct. App. 1991)(law enforcement officers whose negligent supervision and training of their subordinates proximately resulted in commission of torts by those subordinates are subject to liability under New Mexico Tort Claims Act).

---

[2]The complaint is not a model of clarity.  To the extent that Plaintiff may have attempted to state a § 1983 claim against Nissen under a theory of supervisory liability, her claim is barred.   A plaintiff may establish a § 1983 claim against a supervisor for the unconstitutional acts of his subordinates if he shows that: (1)the supervisor's subordinates violated the constitution; and (2) an "affirmative link" between the supervisor and the violation, namely the active participation or acquiescence of the supervisor in the constitutional violation by the subordinates. *Holland v. Harrington*, 268 F.3d 1179, 1187 (10th Cir.2001); *Green v. Branson*, 108 F.3d 1296, 1302 (10th Cir.1997).  Here, Plaintiff has failed to raise a genuine issue of material fact with respect to Coleman's non-supervisory status.

Coleman contends that he cannot be held liable because, by Plaintiff's own admission, he was not present at the time Nissen allegedly injured Plaintiff when he crushed her hand.   Although conceding that Coleman was not present when Nissen crushed her hand, for the *first* time, in her response to Defendants' motion for summary judgment, Plaintiff advances a new theory that she was also injured, in part, at the *scene* of the arrest.[3]

The Tenth Circuit has interpreted the inclusion of new allegations in a response to a motion for summary judgment as a potential request to amend the complaint. *See Viernow v. Euripides Dev. Corp.*, 157 F.3d 785, 790 n.9 (10th Cir. 1998)("issues raised for the first time in a plaintiff's response to a motion for summary judgment may be considered a request to amend the complaint, pursuant to Fed.R.Civ.P. 15"). The Court will not grant Plaintiff leave to file an amended complaint on this basis for the following reasons.

Plaintiff alleged in her complaint that "at the time of the stop and at all times relevant hereto [she] was acting in a quiet and peaceful manner"¶15  and that her injury was caused when Nissen "crushed Plaintiff's right hand by squeezing it with his own hand while she was handcuffed." When asked by Defendants' counsel during her deposition if the harm that Nissen did was "[g]rabbing [her] hand and tightening the handcuffs on [her] wrist," Plaintiff stated "[y]es." When asked if there was "[a]nything else," she replied, "that was basically it." (Pl. Ex.3, Pl. Depo. at 226, lines 8-15).  Although she has consistently maintained that her injuries were caused by Nissen squeezing her hand while she was handcuffed, see Complaint, (filed January 10, 2007), Joint Status Report, filed April 18, 2007 [Doc. No. 7] and Pretrial Order, filed August 20, 2008 [Doc. No. 30], for the first time in her response to summary judgment, filed March 14, 2008 [Doc. No. 24], she

---

[3]It is uncontroverted that Nissen allegedly crushed Plaintiff's hand after they arrived at the Sheriff's department and not at the scene of the arrest.

advances a new theory based on facts that contradict her statements in the Complaint that she was "quiet and peaceful" at "all times."  In her Response, she appears to argue that she was injured, at least in part, during the course of a struggle at the time of her arrest.   In support of her new theory, Plaintiff points to her deposition where she testified that at the time of her arrest, she "yelled a little bit" and "said that [the handcuffs] hurt." (*See* Pl. Ex. 3, Pl. depo at 95-96).  In an effort to further support her new theory, she also appears to credit the testimonies of Coleman and Nissen.  She points to Nissen's testimony that Plaintiff resisted being placed in handcuffs, and was swinging both arms, requiring him to restrain her to place the handcuffs on her.[4]  Plaintiff also directs the Court's attention to Coleman's testimony that is consistent with Nissen's.   Specifically, Coleman testified that Plaintiff was struggling and that she was  "very upset . . . mad . . . crying . . . yelling and screaming and carrying on."  Pl. ex. 1 at 47-48.

Thus, Plaintiff, advances not only a new theory that the manner in which the handcuffs were applied at the scene may have contributed to her injuries, but the very theory she advances, appears to rely on facts entirely inconsistent with her first theory that she was "quiet and peaceful" throughout.

The Court finds the inconsistency of Plaintiff's new theory and its late disclosure to be very troubling.   Plaintiff has had first-hand knowledge of the facts underlying her arrest since the day of her arrest.  She never mentioned her second theory of injury to her treating physicians and never included it in her complaint, the joint status report or even most recently in the pre-trial order, filed

---

[4]While Plaintiff seems to credit the testimony of the police officers in order to bolster her second theory, it is noteworthy that she testified in her deposition, *contrary* to her new theory, that when the handcuffs were placed on her, she did not struggle or resist and did not pull away.  She stated that she tried to comply "as much as [she] could" and that as soon as Nissen asked her to put her hands behind her back, she did so.  (*Id.* at 109, lines 9).

August 20, 2008. It appears that her new theory has been advanced in an effort to avoid summary judgment on some of her claims.

Under such circumstances, the Court will not permit Plaintiff to amend her complaint to allege that she sustained injuries at the scene of the arrest. *See Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1206 (10th Cir. 2006)( "Courts will properly deny a motion to amend when it appears that the plaintiff is using Rule 15 to make the complaint "a moving target," to "salvage a lost cause by untimely suggestion of new theories of recovery," [or] to present "theories seriatim" in an effort to avoid dismissal)(internal quotations omitted).

The untimeliness of Plaintiff's motion, in and of itself, is a sufficient basis for denying Plaintiff leave to amend the complaint, in light of the fact that she has been fully aware of all historical facts underlying her claim since the day of her arrest.[5] *See Pallottino v. City of Rio Rancho*, 31 F.3d 1023 (10th Cir. 1994) (untimeliness alone is a sufficient reason to deny leave to amend, "especially when the party filing the motion has no adequate explanation for the delay." *citing Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365-66 (10th Cir. 1993; *see also State Distribs., Inc. v. Glenmore Distilleries Co.*, 738 F.2d 405, 416 (10th Cir. 1984) ("where the party seeking amendment knows or should have known of the facts upon which the proposed amendment is based but fails to include them in the original complaint, the motion to amend is subject to denial.").

Moreover, in light of the particular circumstances of this case, to permit Plaintiff leave to amend the complaint would entirely undermine the important policy considerations underlying qualified immunity and the well-established principle that qualified immunity issues must be resolved at the earliest possible moment in litigation. *See Medina v. Cram*, 252 F.3d 1124, 1128

---

[5]The Court notes that the Complaint was filed January, 18, 2007. The deadline to file an amended complaint was July 10, 2007. *See* Joint Status Report, filed April 18, 2007 [Doc. No. 7].

(10th Cir. 2001)(qualified immunity must be resolved at the earliest possible moment, for it shields

government officials from liability under 42 U.S.C. § 1983 and the weighty litigation that could

detract from the future performance of their duties).

Since Coleman is not liable under a theory of supervisory liability or for failing to intervene

to prevent Nissen from violating Plaintiff's rights when Nissen allegedly crushed her hand, all

claims against Defendant Coleman in his individual capacity will be dismissed.

## IV. § 1983 claim against Nissen in his individual capacity

Plaintiff's §1983 claim against Nissen is premised on Nissen's alleged violations of her

substantive Due Process and Equal Protection rights under Fourteenth Amendment of the United

States Constitution.

In pertinent part, 42 U.S.C. § 1983 provides that:

> Every person who, under color of any statute, ordinance, regulation,
> custom, or usage, of any state . . . subjects, or causes to be subjected,
> any citizen of the United States or other person within the jurisdiction
> thereof to the deprivation of any rights, privileges, or immunities
> secured by the Constitution and laws, shall be liable to the party injured
> in an action at law, suit in equity, or other proper proceeding for redress. . . .

42 U.S.C. § 1983 (1982).

Nissen has raised the defense of qualified immunity.

The standard for analyzing a motion for summary judgment shifts slightly when a defendant

raises qualified immunity as a defense in a suit under §1983.

Qualified immunity bars § 1983 suits against defendants in their individual--but not official--

capacities. *See, e.g., Kentucky v. Graham*, 473 U.S. 159, 167, 87 L. Ed. 2d 114, 105 S. Ct. 3099

(1985) (citations omitted). The qualified immunity defense was created to shield public officials

"from undue interference with their duties and from potentially disabling threats of liability."

11

*Harlow v. Fitzgerald*, 457 U.S. 800, 806, 73 L. Ed. 2d 396, 102 S. Ct. 2727 (1982). It provides immunity from suit and not merely from liability. *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). It therefore spares defendants the burden of going forward with trial. *See Wilson v. Meeks*, 52 F.3d 1547, 1552 (10th Cir. 1995) (*citing Powell v. Mikulecky*, 891 F.2d 1454, 1457 (10th Cir. 1989)).

Once a moving party raises the defense of qualified immunity, the nonmoving party must (1) assert facts which, if true, would constitute a violation of a constitutional right, and (2) demonstrate that the "right was clearly established at the time such that a reasonable person in the [movant's] position would have known that [the] conduct violated the right." *Garramone v. Romo*, 94 F.3d 1446, 1449 (10th Cir. 1996) (citations omitted); *see also, e.g., Saucier v. Katz*, 533 U.S. 194 (2001). This inquiry . . . must be undertaken in light of the specific context of the case, not as a broad general proposition. . ." *Id.* The relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation. . ." *Id.* at 202. The Tenth Circuit has held that for a right to be clearly established, "there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Medina v. City of Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992).

If a nonmoving party fails to satisfy its two-part burden, a court must grant the moving party qualified immunity. *See Medina*, 252 F.3d at 1128. If the nonmoving party, however, successfully demonstrates the violation of a clearly established right, the moving party assumes the normal summary judgment burden of demonstrating that no genuine issue of material fact exists that would defeat its claim for qualified immunity. *See Woodward v. City of Worland*, 977 F.2d 1392, 1396-97 (10th Cir. 1992) (citations omitted), *cert. denied*, 509 U.S. 923 (1993).

### A. Substantive Due Process

12

### i. Whether Facts Alleged Constitute Violation of Substantive Due Process

Pursuant to the standard set forth above, the Court must first determine whether Plaintiff has asserted facts which, if true, would constitute a violation of substantive due process.   The Court finds that under *Graham v. Connor*, 490 U.S. 386 (1989), Nissen's alleged misconduct in crushing Plaintiff's hand by squeezing it and tightening down the handcuffs, does not constitute a violation of substantive due process.  In *Graham*,  the Supreme Court held that *"all* claims that law enforcement officers have used excessive force-deadly or not- in the course of an arrest, investigatory stop, or other "seizure" of a free citizen should be analyzed under the Fourth Amendment and its "reasonableness" standard, rather than under a "substantive due process" approach." *Id.* at 395.   The Court reasoned that "because the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims." *Id.* Under *Graham*, therefore, if a constitutional claim is covered by a specific constitutional provision such as the Fourth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process. *See United States v. Lanier*, 520 U.S. 259, 272, n.7 (1977).

Plaintiff claims that she was injured when Nissen crushed her hand by squeezing it while her hands were handcuffed and then tightening the handcuffs.  Her alleged injury arose in the context of her arrest for DWI.  Therefore, her claim is "covered by" the Fourth Amendment and must be analyzed under that provision rather than under substantive due process. *See Cortez v. McCauley,* 478 F.3d 1108, 1129 (10th Cir. 2007)(analyzing claim that handcuffs were unduly tight during arrest under Fourth Amendment).

Although Plaintiff has failed to establish that Nissen's alleged misconduct constitutes a

13

violation of her substantive due process rights, if she can establish that Nissen's alleged misconduct

constitutes a violation of her Fourth Amendment right to be free from excessive force and that the

contours of her Fourth Amendment right in the context of this case, were "clearly established" at the

time of her arrest, the Court shall permit Plaintiff to amend her complaint to set forth a § 1983 claim

based on a violation of her Fourth Amendment right to be free from excessive force.

### B. Fourth Amendment-Excessive Use of Force

Courts must analyze claims of excessive force in the context of an arrest under the Fourth

Amendment reasonableness standard.  *See Graham,* 490 U.S. at 396 (1989). In *Graham,* the

Supreme Court explained that:

> Because "[t]he test of reasonableness under the Fourth Amendment is not capable
> of precise definition or mechanical application, . . . its proper application
> requires careful attention to the facts and circumstances of each particular case,
> including the severity of the crime at issue, whether the suspect poses an immediate
> threat to the safety of the officers or others, and whether he is actively resisting
> arrest or attempting to evade arrest by flight.

*Id.*

> The Court further explained that:

> The "reasonableness" of a particular use of force must be judged from the
> perspective of a reasonable officer on the scene, rather than with 20/20 vision
> of hindsight.... The calculus of reasonableness must embody allowance for
> the fact that police officers are often forced to make split-second
> judgments-in circumstances that are tense, uncertain, and rapidly evolving-
> about the amount of force that is necessary in a particular situation.

*Id.* at 396-397.

The Court reiterated that "as in other Fourth Amendment contexts, the "reasonableness"

inquiry in an excessive force case is an objective one: the question is whether the officers' actions

are "objectively reasonable" in light of the facts and circumstances confronting them, without regard

14

to their underlying intent or motivation.  *Id.*

In some circumstances, unduly tight handcuffing can constitute excessive force where a plaintiff alleges some actual injury from the handcuffing and alleges that an officer ignored a plaintiff's timely complaints (or was otherwise made aware) that the handcuffs were too tight. Moreover, the Tenth Circuit has held that a claim of excessive force requires some actual injury that is not de minimis, be it physical or emotional.  *Cortez*, 478 F.3d at 1129.

Here, after Plaintiff advised Nissen that the handcuffs were too tight, he allegedly "crushed her right hand, by squeezing it with his own hand.  According to Plaintiff, after he squeezed her hand, he tightened the handcuffs.  Plaintiff has stated that she was not struggling or fighting at the time and that Nissens actions were not provoked.  According to Plaintiff, the pain was so intense that she almost fell to her knees, as she felt the pain shoot down her right side.  She felt like Nissen was rocking her hand as he squeezed it and she could feel her bones shifting.  Plaintiff has been treated by several physicians for ongoing pain and discomfort in her right hand and wrist that she allegedly experienced immediately after her arrest.  Nissen denies that he squeezed Plaintiff's hand in any way or tightened the handcuffs.   There were no witnesses to the incident.  Viewing the evidence in the light most favorable to Plaintiff, a reasonable jury could find that Nissen's actions constituted excessive force.   A reasonable jury could find that in light of the complete lack of provocation, Nissen's actions were not objectively reasonable.

### ii. Clearly Established

The right to be free from unduly tight handcuffing was "clearly established" at the time of Plaintiff's arrest.  *See Cortez*, 478 F.3d at 1129 (citing cases and implying that this framework was "clearly established" for claims in which plaintiffs allege that "unduly tight handcuffing ... constitute[s] excessive force"); *cf. Hannula v. City of Lakewood*, 907 F.2d 129, 132 (10th Cir.1990)

(analyzing the excessive force claim under the due process clause and concluding that "[t]he cases do not 'clearly establish' that handcuffing a detainee too tightly constitutes excessive force, at least in the absence of apparent physical damage to the plaintiff's wrists"), abrogated in part by *Graham*, 490 U.S. at 394-95. Although *Cortez* was decided after Plaintiff's arrest, *Cortez* implied that the standard for unduly tight handcuffing was already "clearly established." *See Cortez*, 478 F.3d at 1129; *Vondrak v. City of Las Cruces*, 535 F.3d 1198 (right to be free "clearly established" even though Plaintiff was arrested prior to *Cortez* decision because *Cortez* implied that the right was already clearly established).

In addition, Nissen's action in crushing Plaintiff's hand by squeezing it, before tightening the handcuffs, falls within the more general contours of the Fourth Amendment right to be free from excessive force as set forth in *Graham*. In light of pre-existing Fourth Amendment law, a reasonable officer would have understood that by crushing Plaintiff's hand, and tightening the handcuffs, after Plaintiff had complained that the handcuffs were hurting her, he was violating her Fourth Amendment right to be free from excessive force. *See Anderson v. Creighton*, 483 U.S. 635 (1987).

The Court finds that Nissen is not entitled to qualified immunity on Plaintiff's Fourth Amendment excessive force claim because for purposes of summary judgment Plaintiff can establish that: (1) Nissen violated her right to be free from excessive force; and (2) in the context or this case, that right was "clearly established."

The Court shall permit Plaintiff to amend her complaint to set forth a § 1983 claim based on a violation of her Fourth Amendment right to be free from excessive force. Plaintiff's amendment of her complaint will not prejudice Defendant because the conduct underlying the alleged substantive due process violation is identical to the conduct underlying her Fourth Amendment

claim.

### C. Equal Protection

#### (i) Whether Facts Alleged Constitute Violation of Equal Protection

Plaintiff contends that Nissen violated her right to equal protection of the laws under the Fourteenth Amendment by "intentionally injur[ing] her hand." (Pl. Response at 8). She states that such conduct constitutes "intentional and purposeful discrimination." *Id.*

Plaintiff does not allege that Nissen's "intentional and purposeful discrimination" was due to her membership in any protected class, racial or gender group. Rather, her claim appears to rest on the premise that she was discriminated against as a class of one. The Court believes that the recent Supreme Court case in *Engquist v. Oregon Dep't of Agriculture*, 128 S.Ct. 2146 (2008) casts considerable doubt on whether a class of one equal protection claim is viable in the context of this case, i.e., where the facts underlying the claim arise in the course of a criminal investigation or arrest.

The Equal Protection Clause of the Fourteenth Amendment commands that no state shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439 (1985). The "purpose of the equal protection clause . . . is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents ." *Sioux City Bridge Co. v. Dakota County*, 260 U.S. 441 (1923).

Equal protection jurisprudence has typically been concerned with governmental classifications that "affect some groups of citizens differently than others." *McGowan v. Maryland,*

17

366 U.S. 420, 425 (1961). *See, e.g., Ross v. Moffitt*, 417 U.S. 600, 609 (1974) (" 'Equal Protection'

... emphasizes disparity in treatment by a State between classes of individuals whose situations are

arguably indistinguishable"); *San Antonio Independent School Dist. v. Rodriguez*, 411 U.S. 1, 60,

(1973) (Stewart, J., concurring) ("[T]he basic concern of the Equal Protection Clause is with state

legislation whose purpose or effect is to create discrete and objectively identifiable classes").

Plaintiffs in such cases generally allege that they have been arbitrarily classified as members of an

"identifiable group." *Personnel Administrator of Mass. v. Feeney*, 442 U.S. 256, 279 (1979).

However, the Supreme Court has recognized that an equal protection claim can in some

circumstances be sustained even if the plaintiff has not alleged class-based discrimination, but

instead claims that she has been irrationally singled out as a so-called "class of one." *See Village of*

*Willowbrook v. Olech*, 528 U.S. 562 (2000)(per curiam).

 In *Olech* , a property owner had asked the village of Willowbrook to connect her property

to the municipal water supply. Although the village had required only a 15-foot easement from other

property owners seeking access to the water supply, the village conditioned Olech's connection on

a grant of a 33-foot easement. Olech sued the village, claiming that the village's requirement of an

easement 18 feet longer than the norm violated the Equal Protection Clause. Although Olech had

not alleged that the village had discriminated against her based on membership in an identifiable

class, the Court held that her complaint stated a valid claim under the Equal Protection Clause

because it alleged that she had "been *intentionally treated differently from others similarly situated*

*and that there [was] no rational basis for the difference in treatment*" (emphasis added). *Id.* at 564

(*citing Sioux City Bridge Co. v. Dakota County*, 260 U.S. 441(1923), and *Allegheny Pittsburgh Coal*

*Co. v. Commission of Webster Cty.*, 488 U.S. 336 (1989)).

 After *Olech*, lower courts struggled to define the contours of class of one claims. All [courts]

recognized that unless carefully circumscribed, the concept of a class-of-one equal protection claim could effectively provide a federal cause of action for review of almost every executive and administrative decision made by state actors. *Jennings v. City of Stillwater*, 383 F.3d 1199 (10th Cir. 2004). Some Courts, including the Tenth Circuit, took the lead of Justice Breyer who issued a concurrence in *Olech*. In his concurring opinion, Justice Breyer expressed concern that *Olech* would transform ordinary violations of state or local law into constitutional cases. *See Olech*, 528 U.S. at 565-66. Justice Breyer observed that because zoning decisions almost always treat one landowner differently than another, "one might claim that, when the city's zoning authority takes an action that fails to conform to a city zoning regulation, it lacks "rational basis." *Id.* at 565. Justice Breyer concurred in the judgment only because the claims in *Olech* were actionable specifically because they alleged that the city officials took vindictive action with illegitimate animus and ill-will. *See Bartell v. Aurora Pub. Schs.*, 263 F.3d 1143, 1149 (10th Cir. 2001)(dismissing class-of-one claim because plaintiff provided no concrete evidence of a campaign of official harassment directed against him out of sheer malice)(internal quotations omitted); *Jennings*, 383 F.3d at 1210 (recognizing that Tenth Circuit in *Bartel*, appeared to have adopted requirement that class of one action must include element of ill will or malice).

Most recently, in *Engquist*, the Supreme Court held that the Equal Protection Clause does not apply to a public employee asserting a violation of the Clause under a class-of-one theory. In so holding, the Court explained:

> There are some forms of state action . . . which by their nature
> involve discretionary decisionmaking based on a vast array of subjective,
> individualized assessments. In such cases the rule that people should be
> "treated alike, under like circumstances and conditions" is not violated
> when one person is treated differently from others, because treating
> like individuals differently is an accepted consequence of the discretion
> granted. In such situations, allowing a challenge based on the arbitrary

> singling out of a particular person would undermine the very discretion
> that such state officials are entrusted to exercise.

*Id.* at 2154.

Applying this principle to the case at hand, the Court concluded that the "class of one theory of equal protection--which presupposes that like individuals should be treated alike, and that to treat them differently is to classify them in a way that must survive at least rationality review--is simply a poor fit in the public employment context." *Id.* at 2154. The Court stated that "to treat employees differently is not to classify them in a way that raises equal protection concerns. Rather, it is simply to exercise the broad discretion that typically characterizes the employer-employee relationship. A challenge that one has been treated individually in this context, instead of like everyone else, is a challenge to the underlying nature of the government action." *Id.*

The Court in *Engquist* highlighted the fact that *Olech* and the cases on which it relied involved "clear standard[s]" against which departures, even for a single plaintiff, could be readily assessed. *Id.* at 2153. In the context of the prosecution and investigation of criminal cases which involves "discretionary decisionmaking based on an array of subjective, individualized assessment," *id.* and where clear standards do not exist, it appears that a class-of-one equal protection claim may no longer be viable. However, rather than reach this ultimate question, the Court finds that Defendant has failed to present any evidence to establish that Nissen intentionally *discriminated* against her when he allegedly crushed her hand.

Plaintiff has failed to make an adequate showing that she was intentionally treated differently than others similarly situated. Such a showing is critical to establish an equal protection claim. *See City of Cleburne,* 473 U.S. at 439 (the Equal Protection Clause is "essentially a direction that all persons similarly situated should be treated alike"). It is this comparative element that distinguishes

the Equal Protection Clause from the Due Process Clause. *See Ross v. Moffitt*, 417 U.S. 600, 609,

94 S.Ct. 2437, 41 L.Ed.2d 341 (1974) (" 'Due process' emphasizes fairness between the State and

the individual dealing with the State, regardless of how other individuals in the same situation may

be treated. 'Equal protection,' on the other hand, emphasizes disparity in treatment by a State

between classes of individuals whose situations are arguably indistinguishable.").

To be considered "similarly situated," the class of one challenger and his comparators must

be "prima facie identical in all relevant respects or directly comparable . .. in all material respects."

*United States v. Moore*, 2008 WL 4149755 (C.A. 7), *citing Racine Charter One, Inc. v. Racine*

*Unified Sch. Dist.*, 424 F.3d 677, 680 (7th Cir. 2005).   Although this is not a precise formula, it is

nonetheless clear that similarly situated must be very similar indeed. *McDonald v. Vill of Winnetka*,

371 F.3d 992, 1001 (7th Cir. 2004). *See Jennings*, 383 F.3d at 1214 ("it is imperative for the class

of one plaintiff to provide a specific and detailed account of the nature of the preferred treatment of

the favored class).

Plaintiff did not present any evidence, let alone argument that she was in fact similarly

situated to any other individuals. Nor could she. The only individuals who she might conceivably

argue were similarly situated are co-arrestees Gonzales and Rudolph, but they are not similarly

situated enough to enable the Court to "meaningfully compare," id. at 1215, Plaintiff's treatment and

the treatment of Gonzales and Rudolph. This is primarily so, because Nissen arrested Plaintiff and

other Deputies arrested Gonzales and Rudolph. *See Radue v. Kimberly-Clark Corp.*, 219 F.3d 612,

618 (7th Cir. 2000)(explaining that where "different decision-makers are involved, two decisions

are rarely similarly situated in all relevant aspects"); *see also Purze v. Vill. of Wintrhop Harbor*, 286

F.3d 452,455 (7th Cir. 2002) (finding that class of one plaintiffs were not similarly situated to

comparators in part because their zoning-related requests were acted upon by different decision-

makers).    Plaintiff's class of one claim is based on nothing more than Nissen's alleged misconduct--the same misconduct that underlies her § 1983 Fourth Amendment claim, and her state law battery and assault claims.   In essence, Plaintiff has attempted to repackage her § 1983 Fourth Amendment and state law claims as an equal protection claim.  However, for the reasons set forth above, her equal protection claim must fail.

Because Plaintiff has failed to establish that Nissen violated her right to equal protection, Nissen is entitled to qualified immunity.

### V. Plaintiff's Claims Under the New Mexico Tort Claims Act

The Court has already determined that all claims against the Santa Fe Sheriff's Department and Defendants Nissen and Coleman in their official capacities are dismissed.  The only remaining claim under the NMTCA is Plaintiff's claim against Nissen in his individual capacity (First Cause of Action) which seeks to hold Nissen liable for assault and battery pursuant to § 41-4-12 NMSA 1978.

Plaintiff incorrectly injected the issue of qualified immunity within her discussion of her NMTCA claims. (*See* Pl. Response at 9).  In their reply, Defendants then addressed the issue of qualified immunity and urged the Court to find that Defendants Nissen and Coleman are entitled to qualified immunity as a defense to Plaintiff's state law claims.  The parties have failed to properly distinguish between *qualified* immunity and *sovereign* immunity.  Qualified immunity generally shields government officials performing discretionary functions from liability for civil damages arising under federal law insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *See Harlow v. Fitzgerald*, 457 U.S. 800 (1982).  Sovereign immunity is a traditional governmental immunity that exempts all levels of government from legal suits against the government and its entities. *See generally*

22

Borchard, Governmental Responsibility in Tort, 36 Yale L.J. 1 (1926); Davis, Tort Liability of Governmental Units, 40 Minn.L.Rev. 751 (1956). In New Mexico, the NMTCA was enacted by the legislature in response to *Hicks v. State*,  88 N.M. 588, 544 P.2d 1153 (N.M. 1975).  In *Hicks*, the New Mexico Supreme Court effectively abolished sovereign immunity in its entirety.  The Act reinstated sovereign immunity for any governmental entity and any public employee for all torts committed while acting within the scope of duty, except for those specifically waived by the Act.

Section 41-4-4 of the NMTCA states that "a governmental entity and any public employee while acting within the scope of duty are granted immunity from liability for any tort except as waived by sections 41-4-5 through 41-4-12 NMSA 1978." N.M.Stat.Ann. § 41-4-4 (Michie 1989 & Supp.1994).  Under the NMTCA, Defendants, as public employees acting within the course of their employment with the State of New Mexico,  are immune from the tort based claim of intentional infliction of emotional distress unless their immunity is waived by a specific provision of the Act. *See Methola v. County of Eddy*, 95 N.M. 329, 334, 622 P.2d 234, 239 (1980) ("The right to sue and any recovery under the New Mexico Tort Claims Act is limited to the rights, procedures, limitations and conditions prescribed in that Act.").

Section 41-4-12 sets forth a waiver of immunity for law enforcement officers as follows:

> The immunity granted . . . does not apply to liability for bodily injury,
> wrongful death or property damage resulting from assault, battery,
> false imprisonment, false arrest, malicious prosecution, abuse of process,
> libel slander, defamation of character, violation of property rights or
> deprivation of any right, privileges or immunities secured by the Constitution
> and laws of the United States or New Mexico when caused by law enforcement
> officers while acting within the scope of their duties.

Plaintiff brings her NMTCA claims pursuant to §41-4-12.  She alleges that Nissen's actions

of crushing her hand by squeezing it and tightening the handcuffs constituted an assault and battery.

The torts of assault and battery are specifically enumerated in § 41-4-12. Therefore, immunity is waived and Defendants may be liable if Plaintiff sustains her burden at trial.

Nissen argues that he is entitled to summary judgment on Plaintiff's state law claims because she cannot establish a causal connection between Plaintiff's alleged injury and his purported conduct.[6] Nissen's argument is misplaced. N.M. Stat. § 30-3-4 sets forth the elements of battery. Section 30-3-4 provides: "Battery is the unlawful, intentional touching or application of force to the person of another, when done in a rude, insolent or angry manner." There is no requirement that Defendant cause any physical injury to Plaintiff. The same holds true for assault.

Nissen is not entitled to summary judgment on Plaintiff's NMTCA claims brought against him in his individual capacity.

## CONCLUSION

For the aforementioned reasons, the Court finds that Defendants' Motion for Summary Judgement is well-taken in part and shall be granted in part as follows:

**WHEREFORE, IT IS ORDERED** that summary judgment is **GRANTED** on all claims against the Santa Fe County Sheriff's Department and these claims are dismissed with prejudice;

**IT IS FURTHER ORDERED** that summary judgment is **GRANTED** on all claims against Defendant Coleman in his official and individual capacity and these claims are dismissed with

---

[6]Defendant makes the same argument with respect to Plaintiff's §1983 claim. Again, Defendant's argument is misplaced. The causation requirement of §1983 relates to whether or not the defendant caused the deprivation of a constitutional right. §1983 does not require that the plaintiff establish any physical injury, in addition to the deprivation of the constitutional right. *See Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 518 (10th Cir.1988) (a defendant may not be held liable under § 1983 unless he or she subjected a citizen to the deprivation, or caused a citizen to be subjected to the deprivation).

prejudice;

      **IT IS FURTHER ORDERED** that summary judgment is **GRANTED** on all claims against Defendant Nissen in his official capacity and these claims are dismissed with prejudice;

      **IT IS FURTHER ORDERED** that summary judgment is **GRANTED** on Plaintiff's § 1983 claim against Defendant Nissen in his individual capacity, <u>to the extent that</u> it is based on a violation of substantive due process and equal protection;

      **IT IS FURTHER ORDERED** that Plaintiff is granted leave to file an amended complaint to state a §1983 claim against Defendant Nissen in his individual capacity based on a violation of the <u>Fourth Amendment</u>.

      **IT IS FURTHER ORDERED** that summary judgment on Plaintiff's state law claims against Defendant Nissen in his individual capacity is **DENIED**.

Dated this 30th day of September, 2008.

 

_____
MARTHA VAZQUEZ
CHIEF   UNITED   STATES   DISTRICT   JUDGE

Attorneys for Plaintiff:
John T.L. Grubesic
1322 Paseo de Peralta
Santa Fe, NM 87501


Dana K. Grubesic
20 First Plaza
Suite 700
Albuquerque, NM 87102

Attorneys for Defendants:

William D. Slease
P.O. Box 1805
105 14th St. SW
Albuquerque, NM 87103-1805


Jonlyn M. Martinez
(see above address)